IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BAD APPLE,<br><br>                       Plaintiff,<br>v.<br><br>DAVID GIANVITO,<br><br>                       Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND DENYING AS MOOT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>Case No. 2:19-cv-466-JNP-DAO<br><br>District Judge Jill N. Parrish |

Before the court is a Motion to Set Aside Entry of Default filed by pro se Defendant David Gianvito. [Docket 23]. Mr. Gianvito's motion is GRANTED. Plaintiff Bad Apple's Motion for Default Judgment is DENIED as MOOT. [Docket 18].

## BACKGROUND

Plaintiff Bad Apple was organized in June of 2012. The company fixes broken iPhone mobile phones and tablet computers and operates several retail locations in Utah. It has two trademarks registered with the State of Utah Division of Corporations.[1] At the time of its organization, Mr. Gianvito owned 44.5% of Bad Apple. In July of 2014, Mr. Gianvito executed a written agreement assigning his ownership to Trevor Shaw, another part-owner of Bad Apple.[2]

---

[1] Bad Apple represents that it has the following two trademarks registered with the State of Utah Division of Corporations: BAD APPLE (Reg. No. 5674737) and BAD APPLE USA (Reg. No. 5674732).

[2] The parties dispute the purpose of this agreement. Mr. Gianvito alleges that it was a temporary transfer of his interest in Bad Apple, executed so that Bad Apple could obtain a loan. Bad Apple, to the contrary, claims that this transaction was a sale of Mr. Gianvito's ownership interest in Bad Apple.

After the agreement's execution, Mr. Gianvito owned no part of Bad Apple, though he continued to work as a supervising employee at the company.

In late 2014, Bad Apple entered an agreement with Linear Magnitude, Inc. ("LMI") providing that LMI would host and maintain Bad Apple's website at www.badappleusa.com and its Facebook business page. At the time of the parties' agreement, LMI was owned and operated by Luke Heinecke, a friend of Mr. Gianvito's. Bad Apple and LMI's agreement was intended to run for three years, expiring on December 1, 2017. As a result of disputes over charges, however, Bad Apple terminated its agreement with LMI prematurely in November of 2016.

Bad Apple alleges that, as a result of its decision to terminate its relationship with LMI, Mr. Heinecke and Mr. Gianvito conspired to harm Bad Apple's business. It alleges that approximately a month after Bad Apple gave notice of its intent to terminate the contract, Mr. Heinecke and Mr. Gianvito accessed Bad Apple's Facebook page and locked out all users other than themselves. Bad Apple further alleges that it requested that Mr. Gianvito provide Bad Apple with access to the Facebook page and that, when he refused to do so, he was terminated.

Following his termination, Mr. Gianvito allegedly began to work with LMI. While employed at LMI, Bad Apple alleges that Mr. Gianvito used information he had stolen from Bad Apple to lock Bad Apple out of its website. He then allegedly transferred ownership of the account to LMI and deactivated the website. In addition, Bad Apple alleges that Mr. Gianvito disclosed to LMI confidential financial information that he had obtained through his time at Bad Apple in order to harm Bad Apple's business.

In the wake of this alleged conduct, Bad Apple filed this suit against Mr. Gianvito, bringing six causes of action. It alleges a violation of the Anticybersquatting Consumer Protection Act, common law trademark infringement, intentional interference with a business relationship, civil

conspiracy to convert Bad Apple's domain name and to maliciously harm Bad Apple, and conversion. Additionally, Bad Apple seeks corrective advertising damages for Mr. Gianvito's alleged shutting down of its website and spreading of misinformation in the workplace.

At issue in this order, however, is Mr. Gianvito's failure to appear in this action in a timely manner. While Bad Apple made diligent efforts to serve Mr. Gianvito personally, it was unable to do so. Bad Apple identified Mr. Gianvito's address in Portland, Oregon and hired a process server who, over the course of approximately eleven days, attempted service seven times. None of the attempts were successful, despite the process server's report indicating that the apartment was inhabited during at least one of his service attempts.[3] On his final attempt, the process server left his contact information on the apartment door. He was never contacted by Mr. Gianvito.

In October of 2019, after these diligent efforts to personally serve Mr. Gianvito failed, Magistrate Judge Furse authorized Bad Apple to serve Mr. Gianvito by publication. In addition, Judge Furse ordered Bad Apple to e-mail copies of the complaint, the summons, and the order granting Bad Apple's motion for service by publication to Mr. Gianvito's counsel in another case, case number 2:19-cv-0004.[4] Service was completed on November 2, 2019. Mr. Gianvito did not appear.

---

[3] Specifically, the process server noted that, after he had knocked on the apartment door and began to walk back to his car, he "could see into the window and saw a 30 yr [sic] old, white, female looking out the window at [him]." [Docket 25-6]. The woman allegedly ducked behind the curtain and, when the process server returned to the apartment door and knocked, did not answer. Since appearing in this case, Mr. Gianvito has identified as his own the same Portland, Oregon address at which service was repeatedly attempted.

[4] Case number 2:19-cv-0004 was a federal civil suit brought by Mr. Gianvito against Trevor Shaw, a part-owner of Bad Apple. Mr. Gianvito is represented by counsel in that case, which was remanded to Utah state court in January of 2019. Mr. Gianvito's counsel in that case are aware of this dispute. They have made clear, however, that they do not represent Mr. Gianvito in this suit and that they are not authorized to accept service on behalf of Mr. Gianvito. Despite this, Mr. Gianvito acknowledges that he has discussed this suit with his state court counsel.

In December of 2019, over twenty-one days after service had been completed, the Clerk of Court entered a certificate of default in this case. Two months later, Bad Apple filed a motion for default judgment.

According to Mr. Gianvito, and as is supported by a FedEx shipping receipt that he has attached to his motion, Mr. Gianvito attempted to move to have the entry of default set aside in March of 2020. For reasons that are unclear, the court never received any such filing. Two months later, in May of 2020, Mr. Gianvito refiled his motion, which the court received.

In his filing, which the court reads liberally due to Mr. Gianvito's status as a pro se party, *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996), Mr. Gianvito moves to have the Clerk of Court's entry of default set aside. He argues that the default should be set aside because he lacks representation, he was told he would be served but never received personal service, his default was not willful, and a harsh and unfair result would follow from this court's failure to set aside the entry of default. In its response, Bad Apple contends that Mr. Gianvito has demonstrated no good cause to set aside the entry of default and that Mr. Gianvito has acted in bad faith. Thus, Bad Apple argues that Mr. Gianvito's motion should be denied and, further, that Bad Apple's motion for default judgment should be granted.

## DISCUSSION

**I.   Legal Standard**

Federal Rule of Civil Procedure ("Rule") 55(c) provides that a court may set aside an entry of default for good cause. FED. R. CIV. P. 55(c). In deciding whether good cause exists, the court may consider (1) whether the default was the result of culpable conduct of the defendant; (2) the prejudice to the plaintiff if the default is set aside; and (3) the existence of a meritorious defense. *Hunt v. Ford Motor Co.*, 65 F.3d 178, 1995 WL 523646, at *3 (10th Cir. 1995) (table case).

"[T]he good cause required by [Rule] 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under [Rule] 60(b)." *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009) (quoting *Dennis Garberg & Assocs., Inc. v. Pack–Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997)). Further, "[t]he preferred disposition of any case is upon its merits and not by default judgment." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970).

## II. Factors in Deciding Whether to Set Aside an Entry of Default

The court considers each of the aforementioned considerations in turn and grants Mr. Gianvito's motion. While Mr. Gianvito's conduct is culpable in causing the entry of default in this case, Bad Apple will not be prejudiced if the default is set aside and Mr. Gianvito has alleged facts sufficient to constitute a meritorious defense. The two prongs in Mr. Gianvito's favor, along with the judicial preference for disposing of a case based upon its merits rather than by a default judgment, compel the court to set aside the entry of default.

### A. Mr. Gianvito's Culpable Conduct

The court first considers the culpability of Mr. Gianvito's conduct in the entry of default. "Generally, a defendant's conduct is considered culpable if he has defaulted willfully or has no excuse for the default." *Hunt*, 65 F.3d 178, 1995 WL 523646, at *3. As has been noted, this prong cuts against setting aside the entry of default.

Mr. Gianvito claims that he did not realize a default judgment was possible so long as he was not personally served. Thus, he believed that he was not obligated to appear. While this explanation suggests that he did not willfully default, as he apparently did not realize that entry of default was even a possibility, it is not a compelling excuse for his conduct. Mr. Gianvito

5

essentially admits that he had actual knowledge of this suit prior to the entry of default.[5] Further, Bad Apple has provided ample evidence to suggest that Mr. Gianvito was aware of Bad Apple's attempts to serve him and that Mr. Gianvito made affirmative efforts to avoid being personally served. Mr. Gianvito therefore has no excuse for the default.

Mr. Gianvito's conduct resulted in the entry of default in this case. While he may not have intended to cause the entry of default, he has offered no excuse for his failure to appear. Thus, his conduct is culpable. This factor weighs against granting the motion to set aside the default.

B.      Prejudice to Bad Apple if the Court Sets Aside the Default

The second consideration in deciding whether to set aside the entry of default, prejudice to Bad Apple if the default is set aside, favors granting Mr. Gianvito's motion. Bad Apple makes two arguments regarding the possible prejudice that will result if the court sets aside the entry of default. First, it suggests that the delay caused by Mr. Gianvito's conduct "affects [Bad Apple's] ability to pursue this action to completion and has further removed this case from the documents, witnesses, and facts of the action that occurred in 2016 and 2017." Second, Bad Apple argues that setting aside the default will prejudice Bad Apple because Bad Apple has expended a significant amount of capital in its attempts to serve Mr. Gianvito and in its court filings.

The court is unpersuaded by Bad Apple's first argument. Bad Apple provides no concrete examples of the alleged prejudice that will result from the delay in this litigation. It is not immediately obvious to the court that Bad Apple, which chose to bring this suit two to three years after the relevant events, will be significantly impaired by an additional delay of less than one year.

---

[5] Mr. Gianvito notes that counsel in his state court suit notified him that Bad Apple had filed suit against him in federal court and that he should expect to receive service of process personally. Mr. Gianvito was apparently of the belief that, until he received such personal service, these legal proceedings could not move forward.

6

Without more, the court cannot conclude that Bad Apple will be prejudiced in its prosecution of this case as a result of the delay.

Second, Bad Apple's concerns regarding its capital outlay do not warrant default judgment in this case. Bad Apple first points to the costs associated with attempted service. But these costs are imposed on all plaintiffs. Even if Mr. Gianvito had appeared prior to the entry of default, Bad Apple would have incurred these costs. These expenditures therefore do not constitute prejudice to Bad Apple if the motion to set aside entry of default is granted.

In addition, Bad Apple points to the costs and fees associated with its motion for entry of default, motion for default judgment, and response to Mr. Gianvito's motion to set aside the entry of default. Unlike the service costs, these costs are the result of Mr. Gianvito's failure to appear. While these endeavors have resulted in some costs to Bad Apple, they do not warrant default judgment.[6] This case will be decided on the merits. If Bad Apple prevails on those merits, it may recover these costs and fees.[7] And if Bad Apple does not prevail on the merits, then Bad Apple will not recover the costs associated with bringing suit, demonstrating the policy underlying the strong judicial preference that cases be decided on the merits rather than by default judgment.

The prejudice that Bad Apple alleges is therefore either unsubstantiated or will be remedied in the event that Bad Apple prevails. This prong therefore cuts in favor of granting Mr. Gianvito's motion to set aside the Clerk of Court's entry of default.

---

[6] The court notes that if all motions to set aside an entry of default were to be denied because of the prejudice associated with litigating the default, the aforementioned *Hunt* factors would become irrelevant. Essentially all disputes relating to default result in costs and attorney's fees.

[7] If Bad Apple prevails on the merits, it will recover the costs incurred by rule. *See* FED. R. CIV. P. 54(d). In addition, Bad Apple has requested attorney's fees in its complaint.

    C.      The Existence of a Meritorious Defense

Finally, the court must consider whether Mr. Gianvito has set forth a meritorious defense. Bad Apple brings six causes of actions in this suit. It alleges a violation of the Anticybersquatting Consumer Protection Act, common law trademark infringement, intentional interference with a business relationship, civil conspiracy to convert Bad Apple's domain name and to maliciously harm Bad Apple, and conversion. Bad Apple also seeks corrective advertising damages for Mr. Gianvito's alleged shutting down of its website and spreading of misinformation in the workplace. Underlying these causes of action is an allegation that Mr. Gianvito played a role in locking Bad Apple out of its Facebook page and website.

In his motion, Mr. Gianvito does not directly address the causes of action brought against him. Because he is a pro se party, however, the court construes his filing liberally and holds it to a less stringent standard than the court would hold a more formal motion drafted by a lawyer. *See Riddle*, 83 F.3d at 1202.

Mr. Gianvito categorically denies the alleged facts underlying Bad Apple's causes of action. He contends that he did not have access to Bad Apple's Facebook page and that he did not and could not have locked Bad Apple out of the account. He further alleges that LMI, rather than Mr. Gianvito, shut down Bad Apple's website due to funds that Bad Apple allegedly owed to LMI. In addition, he contends that the actions allegedly taken by Mr. Heinecke on behalf of LMI were Mr. Heinecke's alone. Broadly, Mr. Gianvito claims that he played absolutely no role in the alleged conversion of Bad Apple's domain name and that the claims against him therefore have no merit.

In determining whether Mr. Gianvito has set forth a meritorious defense, this court must take Mr. Gianvito's factual allegations as true. *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978) ("For purposes of this part of the motion, the movant's version of the facts and circumstances supporting his defense will be deemed to be true."). If his factual allegations are true, Mr. Gianvito

did not lock Bad Apple out of its website, did not lock Bad Apple out of its social media account, and did not conspire with Mr. Heinecke to do either of these things. Accepting Mr. Gianvito's factual allegations as true, as the court is obliged to do at this stage, Mr. Gianvito is not subject to liability for the conduct alleged in this case. He has presented a meritorious defense. This factor thus cuts in favor of setting aside the entry of default.

        D.        The Court Shall Set Aside the Entry of Default in This Case

For the foregoing reasons, the court will set aside the Clerk of Court's entry of default. While Mr. Gianvito's conduct caused this default, other factors favor allowing this dispute to be decided on the merits. First, the court notes that Mr. Gianvito, though culpable in causing the default, seems to have been under the incorrect impression that he was not engaged in this litigation at all and therefore did not willfully cause the entry of default. Further, Mr. Gianvito's status as a pro se defendant, the fact that a default judgment has not yet been entered, the strong judicial preference for deciding cases on the merits rather than through default, the lack of incurable prejudice to Bad Apple if this entry of default is set aside, and the meritorious defense presented by Mr. Gianvito all weigh in favor of granting Mr. Gianvito's motion to set aside the Clerk of Court's entry of default.

### III.    Mr. Gianvito's Obligations as a Pro Se Litigant

In ordering that the entry of default be set aside, the court is reopening this litigation. The court emphatically suggests that, in moving forward with the litigation, Mr. Gianvito refrain from the use of profane and offensive language like that employed in his motion. Such conduct has no place in this court and as a pro se litigant Mr. Gianvito is expected to abide by the standards of professionalism and civility by which all attorneys practicing before this court are bound.

Similarly, the court notes that the behavior of which Mr. Gianvito is accused, evasion of service of process, constitutes serious misconduct. The court further suggests that, in the future, Mr. Gianvito refrain from conduct similar to that of which Bad Apple accuses him.

## CONCLUSION AND ORDER

For the foregoing reasons, the court hereby GRANTS Defendant David Gianvito's Motion to Set Aside Entry of Default, [Docket 23], and DENIES as MOOT Plaintiff Bad Apple's Motion for Default Judgment, [Docket 18]. Mr. Gianvito shall have twenty-one days to file an answer to Bad Apple's complaint against him.

Signed September 11, 2020

                                                          BY THE COURT

                                                          Jill N. Parrish
                                                          United States District Court Judge